UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-24216-CIV-LENARD/GOODMAN

LEEANN HOLDERBAUM,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

### ORDER ON PLAINTIFF'S MOTION TO DEEM EXPERT DISCLOSURE AMENDED

United States District Judge Joan A. Lenard referred [ECF No. 133] Plaintiff Leeann Holderbaum's ("Holderbaum") motion to deem her expert disclosure amended [ECF No. 78] to the Undersigned. For the reasons outlined below, the motion is **DENIED**.[1]

### I.  FACTUAL BACKGROUND

This maritime negligence action arises from injuries Holderbaum allegedly sustained as a passenger aboard the cruise ship *M/S Carnival Paradise* (the "Paradise"), which is owned and operated by Defendant Carnival Corporation ("Carnival").

---

[1] Pursuant to 28 U.S.C. § 636(c) and Magistrate Rule 1(h) of the Local Rules of the Southern District of Florida, the parties have consented to having a magistrate judge decide, and issue final orders on, motions concerning discovery. [ECF No. 25]. The District Court entered an Order of reference giving that agreement full force and effect. [ECF No. 26]. Because there is consent and an implementing order, any appeals or objections to this Order must be presented to the Eleventh Circuit Court of Appeals.

According to Holderbaum, she was about to descend the main mid-ship stairway on August 29, 2013 when her shoe caught on the metal "wear strip" on the nose of the top stair, causing her to fall down the stairs and suffer a lower leg and ankle injury. She contends that there is a gap between the bottom edge of the metal strip and the carpet that projects a sharp "lip" toward passengers descending the stairway.

Carnival retained an engineer, Bryan Emond, P.E., USCG (ret.) ("Emond"), to measure the stair landing, nosing, and lip in question, and to analyze the circumstances of Holderbaum's fall. After moving to preclude large segments of Emond's testimony [ECF No. 73], Holderbaum now moves [ECF No. 78] to amend her expert disclosures so as to use Emond's expert witness testimony as substantive evidence in her case-in-chief. Carnival opposes [ECF No. 108] this motion, and Holderbaum has filed a reply memorandum [ECF No. 114].

## II.   ANALYSIS

The District Court required Holderbaum to furnish her expert witness list and reports pursuant to Federal Rule of Civil Procedure 26(a)(2) by September 22, 2014. [ECF No. 17, p. 2]. Holderbaum abided this directive and submitted her expert witness list [ECF No. 51] and the affidavit of Frank Fore, P.E. ("Fore") [ECF No. 52], her expert in engineering and biomechanics. Carnival's expert witness list and report were due on October 22, 2014 [ECF No. 17, p. 2]. Carnival abided this requirement, disclosing Emond

on its witness list on September 25, 2014 [ECF No. 53] and submitting his report on October 22, 2014 [ECF No. 114-1].

Emond's deposition was taken on November 7 and November 19 [ECF No. 82-1]. Holderbaum believes that Emond presented testimony favorable to her case on at least seven different topics during his deposition. [ECF No. 78, p. 2]. Accordingly, on December 10, 2014, Holderbaum filed this motion to deem her expert disclosures amended so that she may use Emond's expert witness testimony in her case-in-chief at trial. [ECF No. 78].

Holderbaum's motion is **denied** because it seeks an untimely amendment of her expert disclosures without providing good cause.

The Court imposed a deadline of September 22, 2014 for Holderbaum to submit her expert disclosures. [ECF No. 17]. Holderbaum's request to amend those disclosures was not filed until December 10, 2014. [ECF No. 78]. Accordingly, Holderbaum's amendment of the disclosures is well beyond the deadline imposed by the District Court, and is therefore untimely.

By seeking to amend her expert disclosures beyond the deadline imposed by the Court, Holderbaum is, in effect, asking the Court to modify the scheduling order imposed in this case. The Eleventh Circuit has stated that scheduling orders "control the subsequent course of the action unless modified by a subsequent order . . . and may be modified only upon a showing of good cause." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417,

3

(11th Cir. 1998). Holderbaum has not presented good cause for amending under these circumstances.

"Once a witness has been designated as expected to testify at trial, there *may* be situations when the witness should be permitted to testify for the opposing party." *Peterson v. Willie*, 81 F.3d 1033, 1037-38 (11th Cir. 1996) (emphasis added). The determination of when the situation is appropriate, however, "is committed to the sound discretion of the district court." *Id.* at 1038 n. 4. For the reasons outlined below, the Undersigned finds that this situation is not appropriate and that good cause has not been shown for modifying the expert disclosures.

First, allowing Holderbaum to present the opposing party's engineering/liability expert in addition to *her own engineering/liability expert* (Fore) in her case-in-chief would be cumulative under Federal Rule of Evidence 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. Holderbaum provides seven points from Emond's testimony that she seeks to present in her case-in-chief,[2] almost all of

---

[2] "Mr. EMOND gave much testimony favorable to the plaintiff, including outright endorsements of several of plaintiff's premises if not conclusions in this case, e.g., (1) that international safety requirements promulgated by the International Maritime Organization (IMO) under the Safety of Life at Sea (SOLAS) treaty (that require escape routes aboard vessels be kept free of obstructions) apply at all times rather than just during emergencies; (2) the stairway where the subject incident occurred is an escape route; (3) that a tripping hazard on a vessel stairway at any time is a SOLAS violation; (4) that the nosing lip on the subject stairway where plaintiff tripped and fell was capable of arresting her shoe and causing her fall; (5) that the lip in question is not an

which are covered by her own expert's expected testimony (as listed in Holderbaum's expert disclosures).

For instance, two portions of Emond's testimony that allegedly favor Holderbaum are his discussions of the SOLAS standards and that a tripping hazard represents a violation of those standards. [ECF No. 78, p. 2]. Holderbaum's expert, Fore, is expected to "discuss applicable safety regulations, codes, standards, guidelines, and recommendations regarding walking surfaces, including stairways." [ECF No. 51, p. 3]. Furthermore, "[h]e will compare these requirements to his observations and measurements of the subject stairway." [*Id.*]. Emond also allegedly testified that the stairway where the incident took place is an escape route. [ECF No. 78, p. 2]. Fore is also "expected to testify that the location of the incident was in an escape route[.]" [ECF No. 51, p. 3].

Holderbaum claims that Emond's testimony about the handrail on the stairway in question also supports her case [ECF No. 78, p. 2], while at the same time, Fore discusses the alleged inadequacies of the Paradise's handrails at length, including the overlapping fact (with Emond's testimony) that the Paradise's handrail was not graspable. [ECF No. 52-1, pp. 4, 6-9, 11, 13, 19-21, 23]. Emond also testified that the nose

---

'open and obvious danger' (to unfamiliar passengers); (6) that a change in walkway elevation capable of snagging a shoe (i.e., a 'lip') is a 'tripping hazard;' and (7) that the handrail the plaintiff was holding is too large and asymmetrical to grasp firmly." [ECF No. 78, p. 2].

lip in question was capable of tripping passengers [ECF No. 78, p. 2], which is also stated by Fore [ECF No. 52-1, p. 16 ("the lip can arrest a shod foot")].

It is abundantly clear that *all* of Emond's testimony that Holderbaum seeks to present in her case-in-chief duplicates the testimony of her own expert witness. Accordingly, the probative value of presenting Emond's testimony in Holderbaum's case-in-chief is minimal, and it would be needlessly cumulative to present two experts on the same exact subject matter. Accordingly, the Undersigned finds no good cause for the untimely amendment of the expert disclosures based upon the substance of what Emond may testify to in Holderbaum's favor.

Additionally, this is not a situation where Carnival is intending to keep Emond from testifying. Emond remains on Carnival's witness list and Carnival reiterated in its response to this motion that it *does* intend to call him to testify during the trial. Accordingly, Holderbaum will have the opportunity to cross examine Emond and raise all of these points before the jury, regardless of whether Emond is designated as her expert witness.

Although designating Emond as Holderbaum's expert for her case-in-chief would not constitute unfair surprise to Carnival, it would still present the possibility of significant prejudice and confusion. In addition, Holderbaum's motion, if granted, would create problems under Rule of Evidence 403, pursuant to which "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger

6

of . . . unfair prejudice, confusing the issues [and] misleading the jury[.]" Fed R. Evid. 403. The primary case cited to by Holderbaum in her motion, *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236 (N.D. Iowa 1996), emphasizes that the "proper standard in these circumstances is a 'discretionary' standard, where the trial court's discretion is guided by a balancing of probative value against prejudice under *Fed.R.Evid.* 403." *Id.* at 246 (italics in original); *accord Peterson*, 81 F.3d at 1036-38.

As outlined above, allowing Emond to testify in Holderbaum's case-in-chief would present minimal (if any) probative value because Holderbaum already has an expert retained and prepared to testify on every matter on which she wants Emond to testify. But the prejudicial effect of allowing Emond to testify in Holderbaum's case-in-chief would be substantially greater.

First, if Holderbaum were permitted to call Defendant's expert in her case-in-chief, she would generate juror confusion about which expert is testifying for which party. The *Peterson* court referred to this potential prejudice as "explosive" when the jury learns that the expert called by one party had originally been hired by an opposing party. *Peterson*, 81 F.3d at 1036-38 (citing 8 Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure: Civil § 2032, at 447 (1994)).

Emond is still retained and hired as Carnival's expert. The likelihood of unfair prejudice is substantial when an expert is still retained by one party and will be offered first by the opposing party. Instead of permitting Holderbaum to use Carnival's expert

in her case-in-chief, which carries the inherent risk of tainting the expert's testimony and confusing the jury (thereby prejudicing Carnival), it is much more prudent, and far less prejudicial, to allow Holderbaum to obtain her desired testimony from Emond only during cross examination. *See also Ferguson v. Michael Foods, Inc.*, 189 F.R.D. 408, 410 (D. Minn. 1999) ("the court shares the concern articulated by several courts that have addressed the present issue, namely, the 'explosive' unfair prejudice that would likely result if the jury were to discover that the expert called by one party had originally been hired by the other.").

Along similar lines, in *Emhart Indus. v. Home Ins. Co.*, 515 F. Supp. 2d 228 (D.R.I. 2007), the plaintiff argued a new trial was warranted because it was precluded from calling the defendant's expert physician at trial. *Id.* at 266. The district court held that because the defendant identified the expert in *voir dire* as a witness that it would call at trial -- a fact the jury was likely to remember -- if the plaintiff had called and questioned the expert instead, then the jury might have inferred that defendant was trying to silence his opinion by not seeking it. The court deduced that as a consequence of the inference, the jury might have afforded unique and undue weight to the expert's opinion simply because he was called by defendant's adversary. *Id.*, citing 8 Federal Practice and Procedure § 2032 at 447.

The *House* court allowed an expert to testify for an opposing party despite acknowledging these inherent risks based upon a showing of "exceptional

8

circumstances." *House*, 168 F.R.D. at 247-48. The *Emhart* court found no such exceptional circumstances in its case because the moving party's "own experts had already opined on the precise issues that" the opposing party's expert would have discussed. *Emhart*, 515 F. Supp. 2d at 266. This is the exact circumstance present here as well: the Carnival-retained expert that Holderbaum seeks to use as her own will be duplicating the precise points that Holderbaum's own expert will be presenting. Thus, the *only* consequence of allowing Emond to testify in Holderbaum's case-in-chief is duplicative discussion of the same topic and the potential of the jury affording Emond's testimony undue weight. This is a significant prejudice that substantially outweighs the *de minimis* probative value.

Furthermore, there are significant practical and logistical hurdles presented by Holderbaum's attempt to use Carnival's expert in her case-in-chief. Experts *retained* by attorneys frequently enter into formal, written agreements. Naturally, these experts are paid a fee for their time and they have the right to either accept or reject an attorney's request to be an expert witness. Holderbaum has not suggested that her counsel has even contacted Emond to see if he would *also* agree to be an expert witness for her, let alone obtained an actual agreement to do so.

To be sure, a party certainly can cross-examine the opposing party's expert witness, but Holderbaum has not provided any authority to suggest that a party can *force* the opposing party's expert to also be an expert witness *for* her. Likewise,

9

Holderbaum has not indicated whether Emond has any professional or ethical concerns, such as conflict of interest issues, which would cause him to decline a request to be an affirmative expert witness for Holderbaum, the opposing party.

The risks associated with a failure to run a conflicts check on a proposed expert are not difficult to discern. A simple, entirely plausible hypothetical demonstrates the point:

Attorney A wants to retain Joe Smith as an engineering expert. If Attorney A did not run a conflicts check on Smith, then he would not learn that Attorney B (at the same firm) is simultaneously in a case where Smith is the *opposing* expert and that Attorney B has challenged Smith's credentials and methodology. That failure to run a conflicts check on Smith would generate significant problems for Attorneys A *and* B. Attorney A might very well be arguing that Smith is a well-qualified, experienced expert with sound methodology -- while Attorney B would be simultaneously arguing, in another case, that Smith is an incompetent, *unqualified* witness whose background and training and methodology are inadequate and that his testimony should be *excluded.* Wouldn't law firms want to know about that type of fundamentally inconsistent scenario before an expert witness was retained? At a minimum, a basic conflicts check concerning the proposed expert would surely be prudent.[3]

---

[3]    In addition to the ethical issues, there may well be financial issues present -- which Holderbaum has not addressed. Is Holderbaum going to pay Emond his daily trial fee (for being an expert witness)? Moreover, Holderbaum does not indicate

The dangers associated with law firms which hire experts in circumstances involving a potential conflict are not illusory. *See In re Androgel Antitrust Litig. (No. II)*, No. MD-2084-TWT, 2011 WL 1882516 (N.D. Ga. May 17, 2011) (involving motions to disqualify expert witnesses because of purported conflicts).

Accordingly, Holderbaum has not shown good cause to overlook the myriad impracticalities and potential ethical pitfalls of designating Carnival's expert as her own.

Finally, in her reply memorandum, Holderbaum introduces a new case to support her motion, *Kerns v. Pro-Form of South Ala., Inc.*, 572 F. Supp. 2d 1303 (S.D. Ala. 2007). In *Kerns*, the defendant filed a motion in limine to prevent the plaintiffs from calling its expert witness during the plaintiffs' case-in-chief. *Id.* at 1308-09. The *Kerns* court cited to *Peterson* for the proposition that it is within the court's discretion to allow a party to call the other side's expert. *Id.* at 1309 (citing *Peterson*, 81 F.3d at 1038 n. 4). In ultimately determining that the plaintiffs *should* be able to call the opposing expert in their case-in-chief, the *Kerns* court rejected several arguments similar to those raised by Carnival. First, the court was unconvinced that the plaintiffs' failure to disclose this witness in their Rule 26 disclosures presented a barrier to calling this witness in their

---

whether Emond would even *accept* a retainer under these unorthodox circumstances. And Holderbaum has not addressed the very real possibility that Emond would not agree to be a trial expert for opposing parties in the same case.

11

case-in-chief, noting that the purpose of Rule 26 was to present unfair surprise and the defendant could not be surprised by its own witness testifying.[4] *Id.* at 1309-10.

The *Kerns* court also rejected outright that *any* prejudice could come from allowing a party to use the opposing party's expert in its case-in-chief.

> If Creel has knowledge of relevant evidence that is otherwise admissible, and if defendant intends to call Creel at trial anyway, why would it be any more confusing or prejudicial for plaintiffs to elicit that evidence on direct examination rather than waiting to do so until cross-examination during defendant's case-in-chief? Either way, the result is precisely the same in terms of the evidence ultimately presented to the jury; therefore, defendant's assertion that allowing plaintiffs to call Creel will somehow confuse the jury is not compelling.

*Id.* at 1310.

As the Undersigned found above, however, there are *substantial* prejudices to allowing one party to call the other's expert in its case-in-chief. Here, the Court sees no reason *except* to prejudice Carnival for Emond to testify during Holderbaum's case-in-chief. To summarize, Emond's opinions that Holderbaum finds favorable are already going to be testified to by Holderbaum's own expert on the same exact subject matter, so there is *zero* probative value to allowing Holderbaum to call Emond as her own expert. At the same time, the potential prejudice to Carnival is significant and 'explosive,' potentially providing undue weight to certain aspects of the expert's testimony over others simply because of the *manner* of presentation. So, while the *Kerns*

---

[4] Here, Holderbaum is preempting the Rule 26 argument by presently moving to make changes to her disclosures ahead of trial, so that she will not be precluded by Rule 26 requirements.

court dismissed similar concerns of prejudice in the case that was before it, the Undersigned, in these present circumstances, deems the prejudice significant.

Furthermore, the *Kerns* court did not at any point address any of the issues of practicality, logistics and ethics that the Undersigned posed here. The designation of an expert to testify in a party's case-in-chief involves more moving parts and complications than Holderbaum gives due. Accordingly, the Undersigned does not find *Kerns* to be particularly persuasive.

Therefore, for all the reasons set forth above, the Undersigned **denies** Holderbaum's motion to deem her expert disclosures amended.

**DONE and ORDERED**, in Chambers, in Miami, Florida, August 20, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
Hon. Joan A. Lenard
All Counsel of Record