## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 13-24216-CIV-LENARD/GOODMAN

LEEANN HOLDERBAUM,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

### ORDER AND REPORT AND RECOMMENDATIONS
### ON DEFENDANT'S *DAUBERT* MOTIONS

United States District Judge Joan A. Lenard referred [ECF No. 67] Defendant Carnival Corporation's ("Carnival") two *Daubert*[1] motions [ECF Nos. 63; 64] to the Undersigned. For the reasons outlined below, the Undersigned **orders** and **respectfully recommends** the following.

1.    The Undersigned **denies without prejudice** Carnival's *Daubert* motion [ECF No. 63] to preclude testimony and opinions of Plaintiff LeeAnn Holderbaum's ("Holderbaum) medical expert, Dr. Craig H. Lichtblau, MD ("Lichtblau"), because of District Judge Joan A. Lenard's subsequent Order [ECF No. 145] granting the motion to continue the trial so that the parties' medical experts can reexamine Holderbaum, issue supplemental expert reports, and undergo supplemental depositions. The medical

---

[1]    *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

expert discovery is presently scheduled to be completed by August 31, 2015, so as of now, Lichtblau's analysis of Holderbaum's medical condition is incomplete and not yet ripe for review. Carnival may refile the motion once expert discovery is complete.

2.     The Undersigned **respectfully recommends** that Carnival's *Daubert* motion [ECF No. 64] to strike and preclude the testimony of Holderbaum's liability expert, Frank Fore, P.E., be **granted in part and denied in part**. Specifically, (1) the statement that a lack of warning signs significantly contributed to Holderbaum's fall, (2) the "Pertinent Facts from Depositions of Defendant" section, (3) the first three paragraphs of the "Executive Summary" of his expert report, (4) the opinion that Holderbaum's "body movements are indicative of a trip, rather than a fall," and (5) the statement that Holderbaum "had just successfully negotiated the upper, identical flights of stairs without difficulty, making it unlikely that she stumbled without an external cause," should be **stricken**, and Fore should be **precluded** from offering opinion testimony about these subjects. The Undersigned recommends denial of all other aspects of Defendant's challenge to Fore.

By way of summary, the challenges to Fore's opinions largely relate -- except in the portions that the Undersigned recommends striking -- to the *weight* of his expert opinion, not its *admissibility*. Carnival will have ample opportunity to pursue its challenges at trial through vigorous cross-examination and impeachment. Although *Daubert* and its progeny require the Court to serve as "gatekeepers" for the

admissibility of expert opinion testimony, they do not mandate that the analysis focus on the substance of the conclusions -- only the qualifications, methodology and helpfulness of the expert and the expert's opinions. Carnival says it is challenging qualifications, methodology and helpfulness, and it does, to some extent, but the experts' qualifications and methodologies are sufficient to permit a fact-finder to evaluate them.

Nevertheless, some of Fore's purported opinions are based on little more than rank speculation, and they should be excluded, along with his opinion testimony which tries to tell the fact-finder how to interpret facts or when to deem certain facts as important. These opinions fail the *Daubert* evaluation and should not be permitted.

## I.     FACTUAL BACKGROUND

This maritime negligence action arises from injuries Holderbaum allegedly sustained as a passenger aboard the cruise ship *M/S Carnival Paradise* (the "Paradise"), which is owned and operated by Defendant Carnival Corporation ("Carnival"). According to Holderbaum, she was about to descend the main mid-ship stairway on August 29, 2013 when her shoe caught on the metal "wear strip" on the nose of the top stair, causing her to fall down the stairs and suffer a lower leg and ankle injury. She contends that there is a gap between the bottom edge of the metal strip and the carpet that projects a sharp "lip" toward passengers descending the stairway.

Holderbaum retained an engineer and general contractor, Fore, to measure the stair landing, nosing, and lip in question, and to analyze the circumstances of Holderbaum's fall. Carnival moves [ECF No. 64] to strike Fore's expert report and preclude him from testifying at trial. Holderbaum opposes [ECF No. 103] the motion, and Carnival has filed a reply [ECF No. 109].

## II.   *DAUBERT* MOTION

### A.   <u>Legal Standard</u>

The admission of expert testimony is governed by Federal Rule of Evidence 702, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has stated that "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594. "Many factors will bear on the inquiry," and no "definitive checklist or test" exists. *Id.* at 593.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry and considers "whether: '(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).

Although there is inevitably some overlap among these three basic factors of qualifications, reliability and helpfulness, they are distinct concepts and should not be merged together. *See generally United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The second area of inquiry referenced above requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of

error; and (4) whether the technique is generally accepted in the scientific community. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *Rink*, 400 F.3d at 1292. These factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *Frazier*, 387 F.3d 1244.

As part of its gatekeeper role, the district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993) (citing, inter alia, *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). "To warrant or permit the use of expert testimony, two conditions must be met: first, the subject matter must be closely related to a particular profession, business or science and not within the common knowledge of the average layman; second, the witness must have such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Faircloth v. Lamb-Grays Harbor Co.*, 467 F.2d 685, 694 (5th Cir. 1972) (internal quotation omitted).

6

**B.**   **Analysis of Carnival's Challenges to Frank Fore**

On September 22, 2014, Fore completed his Rule 26 report. [ECF No. 64-1]. Carnival took Fore's deposition on November 18, 2014. [ECF Nos. 64-2]. Carnival seeks to exclude *all* of Fore's expert testimony for seven broad reasons: (1) Fore is unqualified to render some of his opinions; (2) Fore fails to meet the methodology standards of *Daubert*; (3) Fore's opinion that the nosing fell below the standard of care is unsupported; (4) Fore's opinion that the handrail fell below the applicable standard of care is also unreliable and unsupported; (5) Fore's opinion that a lack of warning signs contributed to Holderbaum's fall is unsupported; (6) Fore's testimony is not helpful to the trier of fact; and (7) Fore's opinions include improper and inaccurate conclusions of law. The Undersigned will address each of the categories in turn.

1.   *Fore is qualified to render certain opinions.*

Carnival first argues that Fore's education, training and experience do not qualify him to render opinions related to the selection, installation and maintenance of carpeting, nosings, and handrails on a passenger cruise line. [ECF No. 64, p. 3]. Carnival does not pinpoint any specific statements from Fore's expert report as being beyond Fore's expertise. Instead, it merely broadly states that Fore's C.V. does not reference any education or experience that would qualify him to proffer any opinion about these subjects. This argument is not convincing.

7

Fore's educational background is as a Professional Engineer and a licensed General Contractor in the state of Florida. [ECF No. 64-1, p. 6]. As part of his experience in the field of general contracting, he designed, constructed and maintained stairways. [ECF No. 52-1, p. 2]. Since 1991, Fore has owned and operated an engineering consulting firm, for which he has "investigated and analyzed numerous accidents and mishaps, including trips, slips, and falls, including on stairs and/or cruise ships." [*Id.*]. This combination of educational and practical experience sufficiently qualifies Fore to offer opinions and testimony on the selection, installation and maintenance of carpeting, nosings, and handrails on a passenger cruise line.

Accordingly, the Undersigned **recommends** that the district court **deny** this part of Carnival's *in limine* motion and **not preclude** Fore from rendering opinions related to the selection, installation and maintenance of carpeting, nosings, and handrails on a passenger cruise line.

2.      *Fore meets Daubert's methodology standards.*

Carnival next argues that there is no identifiable scientific method which objectively explains how Fore reached his conclusions. [ECF No. 64, pp. 3-6]. Carnival primarily focuses on the fact that Fore's proffered methodology employs the factor of "plausible alternative explanations," but, in his analysis, Fore apparently did not consider alternative scenarios as to how Holderbaum may have fallen. [*Id.*, at pp. 3-5].

8

Additionally, Carnival presents two specific statements from Fore's report that it claims are pure speculation and not based on a reliable methodology.

Although certain statements pointed to by Carnival in Fore's report are pure speculation and should be stricken, the Undersigned finds that *overall*, Fore does base his opinions on sufficiently reliable methodology.

In an affidavit, Fore provides a generalized description of his methodology when he is contracted as a consultant in matters such as this. "This process involves hypothesizing the plausible alternative explanations presented by the human-equipment interface in question and then taking into account the relevant literature and equipment performance standards, evaluating the known physical evidence, visiting accident scenes, interviewing available witnesses, if any - to see if conclusions can reached to a reasonable degree of probability." (sic) [ECF No. 52-1, p. 2].

Carnival first narrows in on the "hypothesizing alternative explanations" aspect of this methodology. Specifically, Carnival focuses on Fore's lack of analysis of the alternative explanations that *Carnival* believes may explain Holderbaum's fall. Carnival contends that because Fore's report does not analyze "whether Plaintiff mis-stepped, whether she wore improper footwear, whether she had any medical problems, or whether she had any problems with her gait prior to the subject incident[,]" Fore's report is therefore based upon a faulty methodology. [ECF No. 64, p. 4]. To support this argument, Carnival cites to Fore's deposition testimony, where he admits to not having

performed an independent analysis of Holderbaum's shoes, as well as to never having reviewed Holderbaum's medical records or gait at the time of the incident. [*Id.*, at pp. 4-5]. The Undersigned does not find this to be sufficient evidence to find that Fore's entire methodology is flawed. In fact, it appears that Fore engaged in a thorough, methodical investigation in order to reach his conclusions. There are parts of his opinion which are not permissible, to be sure, and they will be outlined below, but the Undersigned is not prepared to recommend that all his opinions be excluded based on a defective methodology.

Fore identifies and quotes expert-consensus safety standards that apply to stairways on vessels and which are published by respected organizations such as the International Maritime Organization (IMO), American Society for Testing and Materials (ASTM), National Fire Protection Association (NFPA), and U.S. Access Board. [ECF No. 52-1, pp. 7-10]. These published, expert-consensus vessel stairway safety norms and Carnival's own internal flooring standards assisted Fore in his determination of the standard of care for the safety of a vessel stairway. [*Id.*, at p. 9]. Fore also references scientific studies on how people walk on stairs and why they fall on them. [*Id.*, at pp. 3-6]. Fore inspected, measured, photographed, and assessed the scene of the plaintiff's mishap aboard the M/S Carnival Paradise. [*Id.*, at pp. 12-16]. Fore brought along the plaintiff and Michael Longino (the plaintiff's companion, who was present when she

fell). [*Id.*, at p. 12]. Fore had Holderbaum demonstrate what she was doing and where she tripped. [ECF Nos. 52-1, p. 13; 64-2, pp. 23-24, 30].

It is clear that Fore engaged in an adequate scientific investigation of the incident itself, as well as investigating various scientific literature and vessel regulations. The fact that Fore did not consider Carnival's specific *hypotheticals* in his report does not undermine the methodology enough to justify a wholescale Order precluding him from offering any expert opinion testimony.  Carnival will, of course, be able to bring out the alleged deficiencies it perceives in Fore's methodology during cross examination. Carnival may well be able to convince the fact-finder that Fore's methodology is too incomplete and inadequate to rely upon, but that is a potential development which must await trial. Accordingly, the Undersigned **recommends** that Fore's analysis as a whole **not be precluded** on the basis of his methodology.

**However,** Carnival points to two specific statements in Fore's report which are pure speculation and *should* be precluded because they lack an adequate scientific basis.

First, Fore's report states that "Ms. Holderbaum's body movements are indicative of a trip, rather than a slip." [ECF No. 64-1, p. 28]. As noted above, Fore never inquired into Holderbaum's medical records or her gait at the time of the accident [ECF No. 64-2, p. 32]. Furthermore, this statement is made in the conclusion of Fore's report, under the title "factors contributing to this fall," with no description of what analysis actually led to it. Accordingly, the Undersigned **recommends** that Fore's statement that

11

"Ms. Holderbaum's body movements are indicative of a trip, rather than a slip[]" be **stricken** and Fore be **precluded** from testifying to that at trial.

Second, Fore makes the unsupported statement that "[Holderbaum] had just successfully negotiated the upper, identical flight of stairs without difficulty, making it unlikely that she just stumbled without any external cause." [ECF No. 64-1, p. 28]. This statement, also listed at the end of the report in the "factors contributing to this fall" section, is also pure speculation. Fore presents no scientific methodology for how he came to such a conclusion. Accordingly, the Undersigned **recommends** that Fore's statement that "[Holderbaum] had just successfully negotiated the upper, identical flight of stairs without difficulty, making it unlikely that she just stumbled without any external cause[]" be **stricken** and that Fore be **precluded** from testifying to that at trial.

3. *Fore's opinion on the nosing and the standard of care is supported.*

Carnival next argues that because Fore's opinion on the nosing of the stairs is based upon non-binding regulations and guidelines, it is speculation and conjecture. [ECF No. 64, p. 10]. This argument is not persuasive.

First, "[d]istrict court judges in the Eleventh Circuit have followed the rule that 'failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted.'" *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012) (citing *Darville v. Rahming Shipping, Ltd.*, No. 85–1282–CIV–MARCUS, 1987 WL 48393, at *10 (S.D. Fla. Dec. 17,

1987) (rejecting argument that regulations for vessel of one size were irrelevant to one of a smaller size because "it is arguable that [defendant's] failure to fulfill [non-binding] Coast Guard or other maritime requirements still constituted some evidence of negligence").[2] Thus, the fact that the regulations Fore cites to may be non-binding is insufficient to resolve the issue of whether his testimony is based upon a supportable methodology. Fore's testimony applies various regulations and guidelines (that may or may not be binding; that is not the issue being decided in this motion) to the facts of the conditions at the location where Holderbaum fell. In a broad sense, there is nothing inappropriate about following this methodology.

---

[2]      Other federal districts and circuits (and state courts) have followed this evidentiary rule, as have state appellate courts. *See, e.g., Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408 (9th Cir. 1994) (holding trial court did not err by admitting federal OSHA noise-level standards and advising the jury that they were not binding and could not, standing alone, be used to establish negligence as a matter of law); *Giorgio v. Holland Am. Line, Inc.*, No. C05–0038JLR, 2006 WL 1042003, at *2 (D. Wash. Apr. 4, 2006) ("[r]egulations that are not binding by force of law, and therefore do not establish negligence per se, may nonetheless be admitted for the purpose of aiding the finder of fact in determining the applicable standard of care"); *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011) (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs"); *Alderman v. Wysong & Miles Co.*, 486 So. 2d 673 (Fla. 1st DCA 1986) (affirming judgment entered in defendant's favor in a products liability action and rejecting argument that trial court improperly admitted evidence of industry standards provided by a private, voluntary organization).

Substantively, Carnival's motion frequently attacks the *weight* of Fore's opinion concerning the analysis of the nosing and regulations, rather than Fore's actual methodology. For instance, concerning the SOLAS regulations, which Fore states are binding on Carnival and require that walkways be free of tripping hazards and that stairway treads be kept to minimum dimensions in order to reduce the risk of people tripping over them, Carnival emphasizes that the SOLAS regulations do not define tripping hazard and do not give specific dimensions or values for stairway treads. [ECF No. 64, p. 7]. However, this type of inquiry bears more on the *weight* of Fore's testimony, rather than on the methodology that he uses. Fore's purpose as an expert is to present "testimony [that] assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Rink*, 400 F.3d at 1291-92.

The SOLAS standards are not common knowledge to the general public, nor are the interpretations of any ambiguous phrases found in them. It is thus the expert's role in a situation like this to provide the jury with insight and help as to what these regulations are, what they mean and how they are applied. Carnival's contention that certain ambiguities in the regulations render Fore's testimony as pure speculation is misplaced, as the ambiguities in these regulations actually *reinforce* the need for an expert to assist the jury in sorting through these sources to try to establish the standard of care in this negligence action. Accordingly, the Undersigned rejects Carnival's

14

challenge as an attack concerning the weight of the opinion, not the threshold methodology.

Carnival repeats this same theory concerning the National Fire Protection Association's ("NFPA") standards concerning lips on stairs [ECF No. 74, p. 8], the Draft Passenger Vessel Accessibility Guidelines ("DVPAG") [*Id.*, at pp. 8-9], two sets of guidelines from the American Society for Testing and Materials ("ASTM") [*Id.*, at p. 9], and Carnival's own safety standards [*Id.*, at pp. 9-10]. Concerning the NFPA standards, Carnival contends that Fore's use of these standards is not reliable because they state only that any nosing should be free of "lips that could trip stair users[,]" and do not provide a value for stair treads. [*Id.*, at p. 8]. As stated above, this is a situation that permits an expert to offer an informed opinion on what that regulation actually means, in practical terms, in order to help the jury understand.

Concerning DVPAG, Carnival dives into the minutiae of the regulations in order to undermine the *strength* of Fore's opinion that the nosing measured outside this recommended guidelines. [*Id.*, at pp. 8-9]. Carnival particularly focuses on the fact that Fore pushed down on the carpet to make his measurement, an action not expressly called for in the guidelines. For this portion of the argument, Carnival selectively quotes from Fore's deposition and leaves out a crucial explanation he provides as to why it is appropriate to measure the nosing in the manner that he did. Although Fore acknowledges that the guidelines in question do not specifically state that the carpet

15

should be compressed when measuring, Fore also explained that compressibility is known and often considered when discussing carpet against things like nosings. [ECF No. 64-1, p. 15]. Carnival's contentions may surely be addressed during cross examination, but they are not a reason to strike the expert's findings or preclude his testimony at trial.

Carnival raises issues with the ASTM and Carnival's own safety standards on the same issue. Each of these guidelines requires that carpet and/or treads be "flush." Carnival appears to contest that there is no definition of "flush" provided and then concludes that there is therefore no reliable standard on which Fore may provide an opinion. [ECF No. 64, pp. 9-10]. However, as mentioned above, this is a situation in which an expert opinion could be helpful. There are allegedly ambiguities in these guidelines. A jury trying to understand how those in this industry read and interpret the guidelines (and thus establish a custom which may become the standard of care to which defendants may be held) may well be assisted by an informed expert opinion. Carnival attacks only the ambiguity of the regulatory language, and that is insufficient to find Fore's opinion to be scientifically deficient.

Finally, Carnival contends that Fore's reliance on a publication titled IMO/MSC Circular 735 is inappropriate because it is a recommendation concerning elderly and disabled persons' needs, a point Fore acknowledges. There is no contention that Holderbaum is elderly or disabled, and so Carnival claims that any analysis performed

by Fore using that publication is not based upon a reliable methodology. However, there is no accusation that Fore misused the standards in that publication or misapplied the facts. Thus, Carnival's accusation, again, boils down to a challenge to the weight of Fore's testimony.

In *Darville*, the district court rejected the argument that regulations for a vessel of one size were irrelevant to one of a smaller size because "it is arguable that [defendant's] failure to fulfill [non-binding] Coast Guard or other maritime requirements still constituted some evidence of negligence." 1987 WL 48393, at *10. And in *Sorrels v. NCL (Bahamas) Ltd.*, No. 14-14467, 2015 WL 4619887, at *4 (11th Cir. Aug. 4, 2015), the Eleventh Circuit similarly found that even though a non-binding standard for flooring on a passenger cruise line generally discussed standards for *workers*, it did not follow that the standard was automatically inapplicable in a case where a *passenger* was injured on the floor.

Carnival argues that Fore's analysis of IMO/MSC Circular 735 is not based on a reliable methodology because the standards concern the needs of the elderly and disabled. However, the fact that the standards concern people of a different classification than Holderbaum does not make those standards completely irrelevant to establish the standard of care that a cruise line owes to its passengers of all classifications. *See Sorrels*, 2015 WL 4619887, at *4. To be sure, those standards may be accorded less weight than some other set of guidelines or regulations that are *generally*

applicable, but that is an issue to be *weighed* by the trier-of-fact, not conclusively determined as excludable by the Court based on a *Daubert* motion.

Accordingly, the Undersigned **recommends** that the District Court **reject** Carnival's argument and **not preclude** Fore from offering opinions and testimony concerning the standard of care for nosings based upon various binding and non-binding standards.

> 4.   *Fore's opinion that the handrail fell below the standard of care is supported by a sufficiently reliable methodology.*

Carnival next argues that Fore's opinion on handrails is not supported by a reliable methodology because all of the standards, regulations and guidelines are non-binding. The Undersigned addressed this very issue above concerning the standard of care of the nosings on the stairs. The Undersigned applies the same reasoning concerning handrails. To repeat, "[d]istrict court judges in the Eleventh Circuit have followed the rule that 'failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted.'" *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012) (citing *Darville v. Rahming Shipping, Ltd.*, No. 85–1282–CIV–MARCUS, 1987 WL 48393, at *10 (S.D. Fla. Dec. 17, 1987) (rejecting argument that regulations for vessel of one size were irrelevant to one of a smaller size because "it is arguable that [defendant's] failure to

fulfill [non-binding] Coast Guard or other maritime requirements still constituted some evidence of negligence").

So, even if the standards are non-binding (and the Undersigned is not making any judgment on whether they are or not), they still may be used by an expert and presented to a jury in assessing the standard of care owed in a negligence case. Accordingly, the Undersigned **recommends** that the District Court reject Carnival's argument and **not preclude** Fore from offering opinions and testimony concerning the standard of care for handrails based upon various binding and non-binding standards.

> 5.     *Fore's opinion that a lack of warning signs contributed to Holderbaum's fall is unsupported by any scientific methodology.*

Carnival next objects to Fore's statement in his report that "Holderbaum probably would not have fallen had the cruise line . . . posted a warning or crew to alert her to the hazards involved[] . . . [and] Carnival's failure to do so, more likely than not, was a substantial contributing cause to her fall." [ECF No. 64-1, p. 28]. Carnival contends that this statement is offered without any evidence or scientific analysis to explain how the presence of warning signs would have prevented Holderbaum's fall. The Undersigned agrees that this statement lacks any supportable methodology, and is also completely unhelpful to the trier-of-fact by offering nothing more than pure speculation.

It is clear that Fore offers no reasoning to explain his jump in logic from the lack of warning signs to it being more likely than not that this incident would not have occurred. There are no studies or any evidence whatsoever presented to support this conclusion. "Expertise is a rational process and a rational process implies expressed reasons for judgment. 'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" *Miller v. Bayer Corp. (In re Trasylol Prods. Liab. Litig.)*, Case No. 09-81262, 2013 U.S. Dist. LEXIS 93552, at *11 (S.D. Fla. June 20, 2013) (quoting *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989)). Fore offers nothing but a bottom line assertion that warning signs would have had some sort of effect on this incident, and without more, that statement must be stricken.

Accordingly, the Undersigned **recommends** that the District Court **strike** Fore's statement concerning the hypothetical effect of warning signs on the stairs and **preclude** Fore from testifying as to that opinion.

> 6.    *Fore's testimony is helpful to the trier of fact, but certain statements from his report should still be stricken.*

Carnival next contests that, as a whole, Fore's testimony is not helpful to the trier of fact. This argument is not persuasive for many of the reasons already expressed above. The Undersigned has already found that portions of Fore's testimony concern helpful opinions based upon adequate scientific methodology. Additionally, in its

efforts to generally discredit Fore's testimony as a whole, Carnival offers unconvincing arguments which the Undersigned finds unpersuasive.

First, Carnival lists a series of alleged conclusions that Fore reached in his report and claims that each of them is unhelpful to a fact-finder. [ECF No. 64, p. 13]. Carnival alleges that Fore's conclusion that the step Holderbaum allegedly tripped on was an unreasonably dangerous condition and that the handrail was not graspable are factual conclusions to be left to the jury. [*Id.*] Carnival also alleges that Fore made improperly conclusive arguments about the nature and condition of the stairs, and that those too should be excluded as unhelpful to the trier-of-fact. [*Id.*].

Carnival *does not* however, pinpoint where these conclusions can actually be found in the report and/or Fore's extensive deposition testimony. Thus, the Undersigned does not have any concrete statements to analyze under the appropriate standards. Any opinion the Undersigned reaches on the subject of what Carnival claims are improper conclusions by Fore would be an advisory opinion that Fore's testimony must remain within certain bounds. There are ample federal rules that the parties can look to for guidance on what is and is not proper testimony. It is not necessary for this Court to issue an advisory opinion reiterating one or more rules in the absence of an actual controversy. Accordingly, the Undersigned rejects this argument.

However, there are certain opinions and statements that Carnival does specifically mention in its argument that the Undersigned *does* deem unhelpful to a fact-finder and should be stricken.

First, in his expert report, Fore includes a section titled "Pertinent Facts from Depositions of Defendant." All he does here is repeat certain sections of testimony from Defendant and draw conclusions from them. [ECF No. 64-1, p. 16]. All of the facts in this section (judging by the title) are presumably pulled directly from depositions of Carnival's representative(s). These facts are not used in combination with independent findings by Fore to reach any expert-level conclusion. The only purpose that this serves is to reiterate, frame, interpret and highlight the testimony of others. In effect, Fore is attempting to opine on how certain testimony should be assessed and why a fact-finder should deem it significant. This segment of the report does not "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Rink*, 400 F.3d at 1291-92. Accordingly, the Undersigned **recommends** that this entire section be **stricken**.

In the same vein, the first three paragraphs of Fore's "Executive Summary" in his report provide no useful information to help the trier-of-fact understand or determine a fact in issue. [ECF No. 64-1, p. 4]. The paragraphs at issue simply state general statistics about falls in general, falls on cruise ships, and cruises in general. [*Id.*]. These statistics serve no purpose in helping a juror understand any issue or determine any facts

concerning *this* specific case and incident. Accordingly, the Undersigned **recommends**
that these statements be **stricken** as well.

Therefore, overall, the Undersigned finds that a significant part of Fore's
testimony is *generally* helpful to the finders of fact, but the "Pertinent Facts from
Depositions of Defendant" section and the first three paragraphs of the "Executive
Summary" of Fore's expert report should be **stricken**, and Fore should be **precluded**
from testifying about the subjects therein.

7.   *Fore's opinions do not include improper or inaccurate conclusions of law.*

Finally, Carnival asserts that Fore's opinions contain improper and inaccurate
conclusions of law. Specifically, Carnival claims that Fore is presenting an inadmissible
legal conclusion when he opines, as he did in his deposition, that SOLAS is
"mandatory" and has "legal effect" on vessel operators (on ships flagged by countries
that have signed the SOLAS convention) [ECF No. 64-2, p. 27]. [ECF No. 64, p. 15].
Additionally, Carnival claims that Fore's statements that the various codes and
standards he refers to are "[a]pplicable marine safety regulations, codes, standards,
guidelines, and recommendations" [ECF No. 64-1, p. 11] are also inappropriate legal
conclusions. This argument is not well taken.

There is no "per se rule against testimony regarding ultimate issues of fact. By
the same token, however, courts must remain vigilant against the admission of legal
conclusions, and an expert witness may not substitute for the court in charging the jury

regarding the applicable law." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).[3] And while it is true that Federal Rule of Evidence 704 "states that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact[,] . . . Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions." *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-J-33TEM, 2008 U.S. Dist. LEXIS 107653, at *5 (S.D. Fla. June 29, 2008) (citing Advisory Committee Notes to Rule 704 Fed. R. Evid.).

The *St. Cyr* court ultimately ruled that an expert was qualified by the court to be an expert on the cause and origin of a fire at the heart of the case, but that did not qualify him to make legal conclusions regarding the plaintiffs' duty to maintain a propane system or other legal issues. *Id.* In *Brown v. Bray & Gillespie III Mgmt. LLC*, the court concluded that an expert's opinion that "the operators of the hotel knew, or should have known, that hotel water systems, including whirlpool spas, present a risk of Legionnaire's Disease and must be maintained to minimize Legionella bacteria[]" was an inappropriate legal conclusion because an expert "may not testify as to what these Defendants knew or should have known." No. 6:06-cv-661-Orl-22GJK, 2008 U.S. Dist. LEXIS 45673, at *5 (M.D. Fla. June 10, 2008). Both of these cases are inapposite to Fore's deposition testimony and his expert report.

---

[3]     The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

The applicable law in this case is the civil negligence standards. Specifically, Fore is testifying to technical issues surrounding causation and the standard of care, in the civil liability context, to which Carnival is held. In the statements that Carnival has pinpointed, there are no inappropriate conclusions that substitute the expert's opinion on the applicable law in this case for that of the Court.

Concerning the statements on SOLAS, it is perfectly reasonable for an expert to explain what SOLAS is, which is a convention concerning safety at sea that numerous nations have signed. It is not common knowledge as to what the convention is and what its effect is on flagged ships. Thus, an expert explanation as to the nature of that convention and its effect is relevant, and there is no rule barring a witness from making such a statement. Fore would not be telling the jury what the specific standard of care is in this situation. Instead, he would be providing the jury with the information that it may use to help determine for itself the specific standard of care.

Concerning the references to "[a]pplicable marine safety regulations, codes, standards, guidelines, and recommendations[,]" the Undersigned reaches the same conclusion. As stated above concerning the use of non-binding standards in Fore's analysis, such regulations, standards, guidelines and recommendations are all relevant to determining the standard of care in this negligence action. At no point in his deposition or in his report did Fore instruct as to what the standard of care actually is,

but, rather, pinpointed relevant pieces of information (certain guidelines and regulations) that could assist the fact-finder in determining the standard of care.

Accordingly, the Undersigned **recommends** that the District Court reject Carnival's argument and **not preclude** Fore from offering opinions and testimony concerning SOLAS and the applicable marine codes, regulations, standards and recommendations.

## III.    CONCLUSION

For the reasons set forth above, the Undersigned **orders** and **respectfully recommends** the following.

1.      The Undersigned **denies without prejudice** Carnival's *Daubert* motion [ECF No. 63] to preclude testimony and opinions of Holderbaum's medical expert, Lichtblau, because of District Judge Joan A. Lenard's subsequent Order [ECF No. 145] granting the motion to continue the trial so that the parties' medical experts can reexamine Holderbaum, issue supplemental expert reports, and undergo supplemental depositions. The medical expert discovery is presently scheduled to be completed by August 31, 2015, so, as of now, Lichtblau's analysis of Holderbaum's medical condition is incomplete and not yet ripe for review. Carnival may refile the motion once expert discovery is complete.

2.      The Undersigned **respectfully recommends** that Carnival's *Daubert* motion [ECF No. 64] to strike and preclude the testimony of Holderbaum's liability expert, Fore, be **granted in part and denied in part**, as outlined above.

## IV.    OBJECTIONS

Under 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have **10** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each party may file a response to the other party's objection within **5** days of the objection.[4] Failure to timely file objections shall bar the parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

**ORDERED AND RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, August 23, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[44]    The Undersigned is shortening the usual time for interposing objections and responses because the issues have been fully briefed and because the District Court will need sufficient time to review any objections and responses before trial, which is scheduled for October 5, 2015.

**<u>Copies furnished to</u>:**

Hon. Joan A. Lenard

All Counsel of Record